The next case called, the cases called are 121306, People v. Kevin Hunter, and 121345, People v. Wilson, Consolidated for Argument, today. Counsel, are you ready? Yes. You may proceed. I understand you have divided your time. You'll be responsible for keeping track of that time. Yes, that is correct, Your Honor. Thank you. May it please the Court, my name is Katie Anderson, and on behalf of the State Appellate Defender, I represent Kevin Hunter. My co-counsel, Meredith Barron, also of the State Appellate Defender, represents Dreshawn Wilson. Kevin and Dreshawn were 16 and 17, respectively, when they were arrested, charged, and sentenced as adults. At issue today is whether legislation that gives the trial court's discretion over whether a child's case is best adjudicated in juvenile or criminal court, and legislation that also gives the trial court's discretion as to whether a juvenile offender should be subject to an otherwise mandatory firearm enhancement, can apply to Kevin and Dreshawn. I will address the temporal reach of the amendment to Section 5130, which removed several offenses from the list of automatic transfer offenses. This issue applies only to Kevin. My co-counsel, Ms. Barron, will address the temporal reach of the sentencing provision that renders otherwise mandatory firearm enhancements optional as applied to juvenile offenders. That issue applies to both Kevin and Dreshawn. As to the automatic transfer statute, Kevin's case should be remanded to the juvenile court so the State can have an opportunity to file a discretionary transfer petition to transfer Kevin to criminal court. Kevin was only 16 when he was arrested and charged with armed robbery, aggravated kidnapping, and aggravated vehicular hijacking. He was automatically transferred to adult court pursuant to the version of Section 5130 that was in effect at the time, where he was convicted and sentenced to the mandatory minimum sentence of 21 years, which included a 15-year mandatory firearm enhancement. But if Kevin was charged today, he would no longer be subject to automatic transfer, and the State would need to petition to transfer Kevin to adult court, and the trial court would get to make an individualized determination as to whether Kevin's case should be adjudicated in adult or juvenile court. And that's because the legislature amended the automatic transfer statute in response to this court's call to allocate more discretion to the trial courts to determine whether a child's case should be tried in juvenile or criminal court, and how that child should be sentenced if convicted. And in doing so, the legislature raised the age for automatic transfer from 15 to 16. They also removed several offenses, including the offenses that Kevin was charged with, from the list of automatic transfer offenses. The lower appellate court here held that the amendment to Section 5130 does not apply to Kevin, because his case was pending on direct appeal on the amendment's effective date, thus depriving him of the opportunity to be resentenced as a juvenile offender. However, People v. Hunter was decided before this court's decision in People v. Howard, which held that the amendment to Section 5130 applies to cases that were pending on the amendment's effective date. This court should overturn the First District's decision in People v. Hunter and follow Howard to its logical conclusion that because the amendment to Section 5130 applies to ongoing proceedings and pending cases under Section 4 of the statute on statutes, it also applies to Kevin, whose case was also pending on the amendment's effective date. Wasn't Howard in a pretrial stance or a posture at the time the change to legislation occurred? That is correct. The defendant in Howard had not yet been tried. That is basically the only difference between this court and Howard, is the tribunal in which the case was pending. But that really is no difference at all, because historically this court's jurisprudence analyzing the temporal reach of a newer amended statute does not distinguish between cases that were pending in the trial court and cases that were pending on appeal on the amendment's effective date. Furthermore, under this court's United States Supreme Court cases and statutory definitions, criminal cases that are pending on direct appeal are considered both pending cases and ongoing proceedings. For example, in People v. Chubich, this court held that sentencing is not final adjudication in a criminal case. In People v. Price, this court noted that a case is pending for retroactivity purposes when it is up on appeal. In Allen v. Hardy, the Supreme Court of the United States defined cases that have reached a final judgment as cases where the judgment of conviction was rendered, the availability of direct appeal exhausted, and the time for petition for cert has elapsed. Furthermore, Illinois' statutory definition of prosecution includes from charging through the final disposition of the case on appeal. Therefore, under these authorities, Kevin's case was both a pending case and an ongoing proceeding within the holding of Howard. Furthermore, a direct appeal is also a proceeding thereafter within the meaning of Section 4. In Howard, this court correctly noted that the amendment to Section 5130 was procedural and it contained no statement of its temporal reach. Therefore, Section 4 governed its applicability to the case at bar, both in Howard and also in this case. Under Section 4, substantive amendments cannot apply retroactively, but procedural amendments can. And Section 4 states that proceedings thereafter shall conform so far as practical to the laws enforced at the time of such proceeding. But nothing in the language of Section 4 suggests that proceedings thereafter excludes direct appeals. And as to the subject of practicability, this court stated in Howard that practicability is not synonymous with convenient and that practicable means possible to be performed. The state has argued that applying the amendment to Kevin would be impracticable because he is now 22 years old and has aged out of the justice system. But this argument is foreclosed by People v. Ford and People v. Brown. In Ford, the juvenile defendant was automatically transferred to adult court where he was acquitted of the automatic transfer offense but convicted of a lesser included offense that was not an automatic transfer offense. This court held that the Ford case should be remanded to the juvenile court so the state could have an opportunity to file a petition for discretionary transfer. And this court also stated that if the trial court found that the defendant was not subject to adult sentencing, the proper remedy would be to discharge the defendant because he was no longer eligible to be committed as a juvenile. And similarly in People v. Brown, this court also remanded a case in which the defendant was over the age of 21 for a discretionary transfer hearing. So it's not impracticable to apply the amendment to Kevin. It would require a remand for further proceedings, but that is certainly possible to be performed. Therefore, Section 4 of the Statute on Statutes is not a bar to remand here and his case is also pending and ongoing and a proceeding thereafter within the meaning of Howard and within the meaning of Section 4 of the Statute on Statutes. Furthermore, it's also significant in this case that the state has not argued that there is a constitutional impediment that would bar the amendment of Section 5130 to Kevin. And because this case was pending on direct appeal on Section 5130's effective date and because there is no constitutional impediment to doing so, the amendment and this court's holding in Howard should be applied to this case. Furthermore, the Hunter court below, in reaching its conclusion that the amendment to 5130 could not apply to Kevin, misapplied our state's retroactivity analysis. And that's because that court applied the retroactive impact test. The retroactive impact test is part of the second set of the land-grant analysis and this court has held repeatedly that we simply do not reach the second set of land-grant. Instead, our retroactivity decisions turn solely on the intent of the legislature. However, it is also significant that the Hunter court did not have the benefit of this court's decision in Howard when it ruled. Regardless though, the Hunter decision needs to be overturned because it misapplied this court's retroactivity analysis. Instead, this court should follow Howard and extend it to its logical conclusion by holding that the amendment to Section 5130 applies to this case and remand Kevin's case to the trial court to determine whether he should be adjudicated in juvenile or criminal court. Although I don't think it's cited in either of the briefs or in the case from 1945 in the Illinois Supreme Court, People v. Lyle said as far as the statute on statute is concerned, it would not apply to a proceeding where the change in the statute occurred after the sentencing. I am not familiar with that case. However, I would be more than happy to submit a supplemental briefing to this court based on how that case may or may not apply to this case. If there are no further questions as to Section 5130, I would like to cede the floor to my co-counsel to address the temporal reach of the sentencing. Good afternoon. May it please the court. My name is Meredith Barron from the Office of the State Appellate Defender, here today on behalf of my client, Dashaun Wilson. Today I will be addressing the second issue raised in our briefs, that Dashaun and Kevin are entitled to new sentencing hearings under Section 105B, which grants the court's discretion as to whether to impose previously mandatory firearm enhancements on juvenile offenders. Your Honors, Dashaun and Kevin were just 17 and 16 years old during the time of their respective offenses. Nevertheless, in addition to the sentences imposed on their underlying offenses, both boys received what was, at the time of their sentencing hearings, mandatory firearm enhancements. While their cases were pending on direct appeal, however, the Illinois legislature enacted Section 105. Now, specifically under Subsection B, courts now have the discretion as to whether to refuse or impose the firearm enhancement as they see fit. Under the plain language of the statute, it's clear that the Illinois legislature intended for Subsection B to apply retroactively, because it does not contain the temporal language like that expressly included in Subsection A, which states that A applies only on or after the effective date of the statute. But where A explicitly indicates that it is to apply prospectively, Subsection B remains silent. Now, the state contends that the temporal language of A must somehow be applied to the entire statutory scheme. But in so arguing, the state completely disregards the well-established rule of statutory construction, which states that where the legislature has employed a term in one place and excluded it in another, it cannot be implied where excluded. And since the effective date language of A was clearly excluded from the other subsections of the statute, then we must presume that the legislature acted purposely, and we cannot take that temporal language of A and just indiscriminately inject it into Subsection B. Additionally, the state ignores that A and B are distinct in their wording, their scope, and their purpose. For example, while A applies to all juvenile offenders who are under the age of 18 at the time of their offense, Subsection B only applies to a very small and specific subset of juvenile offenders who are subject to that firearm enhancement. And additionally, there is actually a practical purpose in applying A prospectively while applying B retroactively. Specifically, 105A simply codifies the sentencing factors that were embodied in cases like Miller, Graham, and Roper, where the U.S. Supreme Court clarified that we can no longer sentence juveniles in the same manner as adults without first considering their age and the attendant characteristics of youth. But long before the enactment of Subsection A, Illinois courts consistently considered a juvenile's age to be a significant factor in mitigation. In other words, Section A merely mandated the contemplation of mitigating factors that sentencing courts in Illinois were commonly taking into account anyway. So it makes sense that the legislature would intend to provide... Mr. Barron, this was a brand new statute, though, right? Yes. And B is a part of a brand new statute which begins by expressly stating that it applies only to crimes that are committed after it's effected. Right? A brand new statute that talks about after it's effected. Now, how would that not apply to both A and B? Well, A states that it's only after the effected date, whereas B does not actually state that. B is in an entire statutory scheme, and if they wanted to, the legislature, as they had done in other parts of the public act, they could have included an effective date language above A, B, and C that clearly applied to all subsections, or below A, B, and C that applied to all subsections. But here we have language that's specifically included in A and A only, and so we have to take the legislature's intent and presume that they acted purposely in excluding it from B. And, again, A is distinct from B. In B, we do have this entirely new procedure for imposing a firearm enhancement, and unlike A, it is indisputable that a juvenile sentence prior to January 1, 2016, was before a judge who did not have the authority... Well, let's say we agree with that proposition. B, isn't that clearly substantive? Before Section 5-4.5-105B, juveniles were subject to mandatory firearm enhancements. After B, they're not. Is that not an absolutely substantive change of the law? It is not, and that's actually the next step that I was going to go into, was Section 4 of the Statute on Statutes. Even if it's not clear what the intent of the legislature was, it does apply retroactively under the Statute on Statutes, because it is procedural. And the reason is, is that unlike a substantive change that categorically reduces an applicable sentence or changes an offense, Section 105B merely creates an additional step in the sentencing process, providing courts the discretion that they were once lacking, and allowing the judge to determine, based on their assessment of the juvenile offender, if they're going to impose the firearm enhancement. And if the court still decides to impose the enhancement, as it clearly under B still has every right to do, then the sentence will remain exactly the same. Here, for example, Dashaun would still receive 31 years, and Kevin would still receive 21. So this is a procedural change, because it simply changes discretion. Now, the state does posit that the expansion of the range is, per se, substantive. And in so doing, they cite People v. Davis. But Davis concerned the application of Miller v. Alabama, which rendered mandatory juvenile life sentences unconstitutional. It was substantive not because of the expansion of the range, but because Miller placed certain mandatory sentences constitutionally beyond the state's power to punish. Here, however, 105B does not concern a constitutional limitation on firearm enhancements, nor does it in any way place those enhancements beyond the state's power to punish. It simply amends the manner of determining whether a firearm enhancement should be imposed, and merely raises the possibility that a court might now decline to impose that enhancement. Therefore, B does nothing more than affect a procedural change in how sentencing judges will determine juvenile dispositions. And in that same light, 105B is not barred by the second sentence of Section 4 of the Statute on the Statutes, because it does not have the effect of automatically lowering the punishment for an offense, and therefore does not involve a sentencing limitation. Instead, it merely alters the procedure by which a court may now determine how they're going to formulate their juvenile sentence. And so it's easily distinguishable from cases that are barred by the second sentence of Section 4. For example, the state cites People v. Hansen, but there, the defendant's punishment was definitively reduced from five years imprisonment to one year. And since Hansen was necessarily mitigating, it was barred by the second sentence of Section 4 in the Statute on the Statutes. But here, the maximum sentence does not in any way change, and nor does Section B automatically have any effect whatsoever on a sentence. It merely grants the court the freedom to forego the firearm enhancement if circumstances so warrant. And since that change in sentencing discretion is procedural, it applies retroactively under Section 4 to all pending cases. And as counsel for Kevin argued earlier, this includes cases currently on direct appeal. Simply put, a pending direct appeal is a proceeding capable of conforming to a change in the law. And when applying Section 4 to statutory amendments that take effect while the case is pending on direct appeal, the only real issue is whether the amendment that changed it is substantive or if it is procedural. And if, as here, it is procedural, it applies retroactively. For these reasons, as well as those addressed in our briefs, we respectfully ask that this court find that Section 105B applies to cases pending on direct appeal as of January 1, 2016, and remand Kevin and Deshaun's cases for new sentencing hearings at which the court will have the discretion as to whether to impose the firearm enhancements. Thank you. Thank you. Discussion? May it please the court. My name is Gopi Kashyap, and I'm here on behalf of the people of the state of Illinois, and I'm from the Attorney General's office. At the outset, Your Honors, this case concerns the retroactivity of statutory provisions, and it does not concern the retroactivity of judicial decisions. And so the cases that were cited by defendants in the reply brief concerning the standards that this court employs in addressing whether a judicial decision is retroactive simply are not applicable here. Rather, this case is governed by the statutory retroactivity principles, and those standards require this court to determine the legislature's intent. And the legislature's intent as to temporal reach is either provided in the new enactment or the amendment at issue, and if it is not, then Section 4 of the statute on statutes provides us that intent. In this case, even assuming that the new juvenile sentencing statute, which I will address first since it's common to both Hunter and Wilson, does not express the state its temporal reach, which we think it does at the very beginning of that new section. But even if it doesn't, and the enactment can be said to be silent or ambiguous as to temporal reach, then this court would look to Section 4 of the statute on statutes. And under Section 4 of the statute on statutes, under that plain language, Section 4 prohibits construing a new law to effect a penalty or punishment that was already incurred under the former law. Defendants Hunter and Wilson were already sentenced in the trial court. The only exception to that rule is found in the mitigating punishment provision in the second sentence of Section 4. And that provision only applies under Hanson and Lyle, which Justice Carmeier cited, and which is cited, Your Honor, in pages 17 to 18 of our brief. And that mitigation provision applies only where the defendant hasn't been sentenced. And so here, Hunter and Wilson were sentenced in the trial court. The amendment took effect, or the enactment took effect, while the case was on appeal. The enactment reduced the mandatory minimum penalties that attach to their crimes. The legally prescribed range for the legally prescribed sentencing range is, Your Honors, the penalty that is affixed to the crime. And so when the legislature lowers that mandatory minimum sentence, it has altered the penalty that is affixed to the crime. And therefore, the change here affects the penalty that Hunter and Wilson already incurred. And under the plain language of Section 4, it cannot apply retroactively. And that is precisely the reason that this Court construed that first section of Section 4 as prohibiting the retroactive application of substantive provisions. And so here, Your Honors, Section 4 cannot apply to Hunter and Wilson. The provision cannot be said to be procedural, Your Honors, simply because it provides more discretion to the judiciary. Any time the legislature reduces the mandatory penalty for a particular crime, it broadens the sentencing range, and necessarily gives the courts more discretion of sentencing. But that doesn't change the effect of the change, which is to affect the penalty that was already incurred. And so for those reasons, the new statutory enactment for juvenile sentencing cannot apply to Hunter and Wilson. I'd like to note, Your Honors, that defendants claim that subsection B governs only, it only removes the mandatory firearm enhancements. That is not so. This is a brand new provision that applies and gives the sentencing ranges for juvenile defendants. It specifically states in subsection B, the penalties that apply to juvenile defendants, the authorized dispositions are those that are found in Article 4.5 of the Code, with the exception that the enhancements are now discretionary. And then subsection C goes on to say that for first-degree murder, for particular types of first-degree murder, the minimum sentence is 40 years, which is different from what it would be for an adult. And so for those reasons, Your Honors, we ask that this Court affirm the judgment that the appellate court entered in Wilson and the part of the judgment that the appellate court entered in Hunter, that the new enactment does not apply to Hunter and Wilson. Turning then to the issue presented by Hunter, the plain language of Section 4 prohibits applying the amendment to the excluded jurisdiction provision to Hunter. The question is, what does Section 4 say? And Section 4 says that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of the proceeding. So the question is whether a particular proceeding must conform to the new law, and that question has to depend on the activity or the event that the procedural rule aims to regulate in relation to the posture of the case. So the central question, as Justice Scalia put it in his concurring opinion in Landgraf, is what is the relevant procedure that the rule regulates? So there are all sorts of procedural rules, Your Honors. There's rules that govern what happens in grand jury indictments. There's rules that govern discovery in civil cases. There's rules that govern trials and the admissibility of expert testimony, and so on and so forth. What the statute on statute says is that the proceedings that are occurring must conform to the law that is in effect at the time. But whether a particular proceeding must conform to a new procedural rule depends on what the activity is that the rule seeks to regulate, and whether the procedure that the rule regulates has already been completed under the old law, such that this proceeding can no longer conform to the new rule. As this Court stated in Howard, and as Defendant stated, the amendment to issue is simply a forum selection provision. It's a tribunal selection provision. The tribunal that tries a juvenile defendant's case. This Court has said that over and over, and people detail it. The Court framed it as that, as a forum selection provision, as the forum that decides where a juvenile is tried. The hunter has already been tried in the criminal court. That proceeding is finished. The amendment says nothing about what should happen once the case is on appeal, and so this proceeding cannot conform to a law that does not govern an appellate proceeding. The rule at issue, the procedural rule, concerns the forum. The forum has been selected, and there's no need to remand for another proceeding in a different forum where it's already been selected. What if the respondent was raising other issues, evidentiary issues or whatever, and the case was reversed on appeal? What would happen then? I just want to make sure I understand your question. Well, you're saying that it's final. The case is final because if there's a determination in the trial court, and it's pending on appeal, and somehow that's not final. And I'm saying, well, okay, let's say we test the idea of finality. What if the Court reversed this case for some other reason and not the issues we have here? Where would it go? Would the case go back to the adult court? Would the case go back? Where would we go? If this Court were to reverse this case for a different reason, for an error that occurred at the trial, for example, below, then the case would get remanded and the State would be allowed to have another trial. However, in juvenile court, the amendment would govern at that time because it is a procedural change, and the proceeding now, this is just like in Howard, the proceeding now, the case is back in the circuit court. And so once it's back in the circuit court, then the amendment applies. The question is that ---- So while it's on appeal, this idea of finality of judgments, this is not, you're saying it's not final even though it's pending on appeal? The case itself is not final, Your Honor. But Section 4 doesn't use the term final judgment. Section 4 uses the terms proceedings thereafter shall conform to the laws enforced at the time of the proceeding. So the question is, what procedure is the rule governing? And if the rule is governing an appellate procedure, so for example, I don't know, the color of our briefs or the page number limitations, then that would apply to briefs that are filed after the change occurs. But certainly the Court wouldn't require us to refile briefs because that is not what the rule is intended to do. It's not intended to go back. And that's consistent with what Section 4 is all about. Section 4's design was to save prior events from later statutory changes. And retroactivity, Your Honor, is premised on the fact that the legislature doesn't want to go back in time and change the law that applied at the time of the crime for a criminal case or at the time that a suit arose in the context of a criminal case. And so most often legislation will not go back in time. And you'll apply the law that was in effect at the time of when the crime occurred or when the suit arose. However, procedural changes are different. And so for procedural changes, you will apply them to ongoing proceedings, but again, in relation to where the case is at that point in time. And so in having to do that. Why, why, why? Why do you say that? From where do you get that? Well, it's because the legislature didn't want to redo everything, Your Honor. That was the point of the statute on statutes. It was that we want to save things that have already occurred. And if we go back and do a review of this Court's cases under the statute on statutes, and I can start with one that was decided right after the statute on statutes was enacted, Farmer v. State, which is cited in People v. Cito, which also cites High Sloppy Finch, which was a 1903 case. Those cases expressly encompass this idea. And the idea is that steps already taken and all things that are done under the old law remain effective. We're not going to invalidate those. This Court said that in Howard. However, the proceedings that are occurring after have to conform to the law that is now in effect. And the future proceedings, and it has to be to future proceedings from when the new law takes effect. I believe it's in High Sloppy where the Court used the term. The procedures that were followed under a prior law before the new law took effect are valid, and only what procedures remain to be done after the new law takes effect need to conform to the law. How did Gleeson and Atkins impact your argument? Gleeson, I believe, it interpreted Section 4, right? And it said that the first component of Section 4 relates to substitute changes, and the proceedings thereafter language relates to procedural changes. And I think that's accurate, Your Honor. The first part, the substantive changes, again, goes to the point where we don't want to reach back in time, and the time that we're looking at is when the crime occurred. That's the normal time, or when the suit arose in a civil case. We're not going to reach back in time and change things, so we're not going to abate prosecutions or abate civil actions simply because the legislature changed something. But there is this proceedings thereafter language, and this Court broadly said that that meant that procedural rules can apply retroactively, and certainly they can. This procedural rule applied retroactively. As it relates to the case before us, isn't the importance of Gleeson and Atkins is that the Court used Section 4 to determine whether the amendments in question applied retroactively on direct review? Sure, Your Honor. The question arose in Gleeson in the context of a criminal statute that had been repealed, and the defendant raised the issue and stated, well, my crime is no longer a crime, and so I feel like I should get the benefit. And so this Court looked at the statute on statutes and determined that, well, when the legislature repeals a crime, that falls squarely within Section 4's prohibition. But your position are that pending cases and ongoing proceedings apply only to trial court proceedings in this context and not to direct appeals? Not for this case. And not for any case. Landgraf encompasses that understanding, Your Honors. This is not a new understanding. Sutherland on statutes expresses this understanding, and if you trace it back, which I did last night, when you go to the early 1900s, it's the same language. And Heisloff v. Finch says that, Farmer v. State, People v. Zito. This is the understanding. Landgraf says it, the concurrence of Landgraf says it. The idea that procedural changes only apply insofar as at the time at which they're affecting the proceedings. So it's a snapshot. If this is an evidentiary rule, are we in the middle of trial? Does this evidentiary rule apply? If it's a rule governing a venue, like it was in Farmer v. State, what's the rule for filing a motion to change venue? What are the requirements for that rule? Once the motion has been filed, there's no need to go back and force the person to file it again. Likewise, grand jury indictment proceedings, if the rules change for what can be admitted in grand jury indictment proceedings, we wouldn't, even in the course of a circuit court proceeding, ask the state to go back and reindict the person. Nor would we do that once the case is on appeal. This is an understanding that's reflected historically in this country, and Section 4 encompasses that understanding. This isn't a new phenomenon, Your Honors. This is what Landgraf stated. This is what Sutherland states. This is what your early cases stated. And so for that reason, this procedural amendment, which governs only the forum in which a juvenile should be tried. And what was the difference then in Gleason and Atkins? In Gleason, the issue was whether the amendment was. So, Your Honor, the question in Gleason and Atkins didn't actually reach the point that we've reached here. The questions in those cases were. They found it substantive. Both of those cases. Yeah, they did. But it seems to me that the importance of Gleason and Atkins lies in their analysis, not in their conclusion as to whether they found it substantive or procedural, right? If the amendments at issue in Gleason and Atkins were procedural. But they were looking to find whether or not it would apply on direct review, right? That was their analysis. There was analysis with respect to direct review, where you talk more in terms of pending and ongoing only applies to the trial. And that is under the plain language of Section 4. And so this case has never really arisen where a provision is changed and it is procedural in nature. And then it comes on appeal. And the change occurs while the case is pending on appeal. And the question before the court is, well, yes, this is procedural. But then does it apply to require a remand? And that question didn't arise in Gleason and it didn't arise in Atkins. And that is because the amendments were substantive. Had the issue arisen, arguably we would have made the same argument, that the proceedings thereafter language in Section 4 requires a look at the nature of the procedure at issue, the time, where we are in time, which proceeding is affected, and whether the rule governs that procedure. And here the rule doesn't govern this proceeding at all. It governs only things that are happening in the circuit court. And as Justice Tice pointed out, we agree that if the case were to be remanded for other reasons, it would have to go back. The case would have to be retried under the amendment because now the case would be back in the circuit court. But to require a retrial here is not contemplated by Section 4 in the statute on statutes, at least not as plain language. Quickly, Your Honor, I'd like to turn to the impracticable argument, which is the alternative argument. Should the court find that the amendment does apply to this appellate proceeding? The Juvenile Court Act is a statutory creation, and it is governed by the Act's plain language. And in Fort, this, contrary to what Hunter said, in Fort, the court didn't remand the case to the juvenile court for a transfer hearing. It remanded the case to the criminal court. And that is under Section 5-131C2. And that provision under the Act expressly required the criminal court to actually conduct the transfer proceeding. It did not apply the Juvenile Court Act's other discretionary transfer proceedings. And as for Brown, the issue was simply not presented. So the court didn't address this question as to whether under Section 4 or whether it was even possible under the Juvenile Court Act to hold a transfer hearing. And the defendant in that case conceded that he could have a transfer hearing in juvenile court. And so those two cases don't apply. So in conclusion, Your Honors, the amendment to the excluded jurisdiction provision does not apply retroactively to Hunter, and nor does the juvenile sentencing provision apply retroactively to Wilson. And therefore, we ask the court to affirm the judgments of the appellate court. Thank you, Your Honor. Thank you. We'll reply, Ms. Anderson. In People v. Howard, opposing counsel stood before you and successfully argued that Section 5130 applies to ongoing prosecutions. Counsel does not challenge the fact that this here is an ongoing prosecution. Counsel also conceded that this case is not yet final. Yet counsel claims without authority that the authority of Section 4 of the Statute on Statutes stops when an appeal begins. But that is not what the legislature intended as it applies to the amendment to Section 5130. It's important to remember the reason why this amendment was passed in the first place. In 2014, in People v. Patterson, this court very clearly acknowledged that the automatic transfer statute that was in effect in Illinois at the time that Kevin was automatically transferred simply doesn't match up with the reality of what we now know about the juvenile brain, how it develops, and how that impacts our criminal justice system and how we deal with children who are charged with serious offenses. This court very strongly condemned the automatic transfer statute that was in effect at the time because it stripped the trial courts of the discretion that they need to ensure that we are dealing with children's cases appropriately regardless of the seriousness of the offense that they were charged with. Furthermore, it is also significant that the amendment to Section 5130 that we are dealing with here contains no temporal limitations. In contrast, this court noted in Howard that several statutes that were passed in the same public act numbers did include savings clause and other limitations on their temporal reach. The fact that Section 5130 contains no temporal limitations in combination with the judicial background of People v. Patterson as well as the entire Roper line of cases and the growing body of scientific evidence as to what we now know about juvenile offenders and how their brain develops strongly indicates that the legislature intended this amendment to 5130 to reach as many cases as possible because the legislature became aware that our old system was not correct. That's why they changed it. They want this amendment to reach as many juveniles as possible, including juveniles whose cases are pending on direct appeal, to ensure that we are giving the trial courts the discretion necessary to appropriately handle these juvenile cases. Furthermore, counsel claims that a remand triggers the application of Section 5130. To the contrary, it is the other way around. It is the amendment to 5130 that should trigger remand. And to hold that a juvenile defendant only gets the benefit of the amendment to 5130 if the case is otherwise remanded would be contrary to the intent of the legislature, which is that we change the system as to how juveniles are automatically transferred because we now recognize that the old system was incorrect. Here, as in Howard, we are not challenging the legality of the transfer at the time. We are simply stating that under the state of the law as it now stands, that transfer was incorrect and his case must be remanded to determine if he needs to remain in adult court or if he should be sentenced as a juvenile. Section 5130 itself, in subsection C2, speaks to the possibility of when a juvenile is transferred to adult court, but after conviction they are not convicted of an automatic transfer offense. And that provision states that when that happens, the state has to file a petition so we can hold a hearing to determine how the juvenile should be appropriately transferred. Section 5130 itself speaks to how we address this situation, which is we send it back to the trial court so the state can have an opportunity to file a petition for a transfer hearing if it so chooses. If there are no questions as to this issue on rebuttal, I will now cede the floor to my co-counsel, Ms. Barron, to address the sentencing provisions. Thank you. Good afternoon again. I just wanted to make one point. Council makes much of the second sentence of Section 4 of the Statute of Statutes and claiming that that is what does not apply here. However, we agree that subsection B does not constitute a sentencing election under the Statute of Statutes. But Kevin and Darshan are not asking for an automatically reduced sentence based on a categorically reduced range. Like, for example, in Hansen, cited again by the state, that's a case where because the range was reduced from five years maximum to one year imprisonment, on appeal the defendant wanted to be electing for that one year. But that's not what's happening in this case under subsection B. Instead, as discussed earlier, the important question is under the first sentence of the Statute of Statutes and whether this is a procedural change or a substantive one. And here, since B merely grants the court the discretion as to whether to forego a firearm enhancement if circumstances so warrant, that is a procedural change that applies retroactively. And we ask that this court find that it applies to Kevin and Darshan and remand their cases for a new sentencing hearing. Thank you. Thank you. Case numbers 121306, Pupil v. Hunter, and 121345, Pupil v. Wilson, will be taken under advisement as agenda number four. Ms. Anderson, Ms. Barron, Ms. Pasha, we thank you for your arguments today. You are excused. Marshal, the Supreme Court stands adjourned until 930 tomorrow morning. Thank you.